

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

FILED
MAR - 8 2018
DON NEWBERRY, Court Clerk
STATE OF OKLA, TULSA COUNTY

ERIC JOHNSON, as the Special
Administrator of the Estate of
ETOYCE JOHNSON, deceased,

    Plaintiff,

v.

STATE OF OKLAHOMA ex rel.
OKLAHOMA DEPARTMARNT OF
PUBLIC SAFETY, A Public Agency of
the State of Oklahoma; MARK
TSCHETTER; MICHAEL C.
THOMPSON; RICKY ADAMS; and
JASON HOLT,

    Defendants.

Case No: CJ-2018-01058

MARY F. FITZGERALD

## PETITION

COMES NOW the Plaintiff, Eric Johnson, as the Special Administrator of the Estate of Etoyce Johnson, deceased, and for his cause of action against the Defendants, states the following:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Eric Johnson, is the son of Etoyce Johnson, deceased. Etoyce Johnson departed this life on June 26, 2016 at the age of 64, leaving behind four (4) children and several grandchildren. Eric Johnson was appointed as the Special Administrator over Etoyce's estate on June 12, 2017. *See In the Matter of the Estate of Etoyce Johnson, deceased,* Tulsa County District Court Case No. PB-2017-470.

**Exhibit 1**

2. Defendant State of Oklahoma ex rel. Oklahoma Department of Public Safety ("OKDPS") is a public agency of the State of Oklahoma responsible for managing and overseeing the Oklahoma Highway Patrol Division of the Department of Public Safety, which is intended to properly patrol and regulate the highways of this state.

3. Defendant Mark Tschetter is an employee of the OKDPS Highway Patrol Division assigned to Troop B in Tulsa, Oklahoma.

4. Defendant Michael C. Thompson is the former Commissioner of the OKDPS and was Commissioner on June 26, 2016, the date of Etoyce Johnson's death which is the subject of this litigation. In his role as OKDPS Commissioner, Defendant Thompson was statutorily responsible for supervising and administering the OKDPS, including the Highway Patrol Division, and responsible for adopting and enforcing such rules as may be necessary to the enforcement and administration of OKDPS, including the Highway Patrol Division. Commissioner Thompson was, at all times relevant hereto, authorized to determine the minimum qualifications for Highway Patrol officers and authorized to set examinations and academies to ensure officers were properly trained and suited for their commissions.

5. Defendant Ricky Adams is the former Chief of Patrol and was Chief on June 26, 2016, the date of Etoyce Johnson's death which is the subject of this litigation. Upon information and belief, in his role as Chief of Patrol, Defendant Adams was, along with the Commissioner, responsible for the operation of the Highway Patrol Division of the OKDPS at all times relevant hereto.

**Exhibit 1**

6. Defendant Jason Holt is the former Captain of Oklahoma Highway Patrol Troop B and was Captain on June 26, 2016, the date of Etoyce Johnson's death which is the subject of this litigation. Upon information and belief, in his role as Captain, Defendant Holt was, along with the Commissioner and Chief of Patrol, responsible for the operation of the Highway Patrol Division of the OKDPS at all times relevant hereto.

7. The acts and injuries which are the subject of this litigation occurred in Tulsa County, Oklahoma.

8. This court has jurisdiction and venue is proper in Tulsa County, Oklahoma.

9. Plaintiff notified Defendants, by and through the Office of Management and Enterprise Services, of his claims stated herein pursuant to the Oklahoma Governmental Tort Claim Act, 51 O.S. § 151, *et seq.*, on or about June 1, 2017. Plaintiff's claims were denied on September 20, 2017. The instant action is timely brought within one hundred and eighty (180) days of denial pursuant to 51 O.S. § 157.

## FACTUAL ALLEGATIONS

### The High-Speed Pursuit and Resulting Motor Vehicle Accident

10. Paragraphs 1-9 are incorporated herein by reference.

11. On or about June 26, 2016, Defendant Tschetter noticed a red 2004 Dodge pickup truck near U.S. 169 and Interstate 44 in Tulsa County. Tschetter ran the tag on the pickup and learned it had been reported as stolen. Tschetter followed the

**Exhibit 1**

vehicle on U.S. 169 until Oklahoma Highway Patrol ("OHP") Troopers Matt Hughart and Whittaker Cochran arrived to assist.

12. After about a mile and a half, the pickup exited U.S. 169 onto Admiral Road and headed west.

13. At approximately Admiral and Mingo Road, Tschetter activated his emergency red and blue lights, indicating to the pickup his intent to pull it over. The pickup briefly pulled to the shoulder of the road but drove away heading northbound on Mingo Road as Tschetter prepared to conduct the stop.

14. During the time between when Tschetter first observed the pickup and the time when he attempted to make the stop at Admiral and Mingo, the driver of the pickup observed all applicable traffic laws.

15. Thereafter, Tschetter and the other patrol cars engaged in a pursuit of the pickup with Tschetter leading as the primary pursuing officer.

16. The pursuit continued northbound on Mingo Road and the pickup failed to stop for the officers and ran through red traffic lights without stopping.

17. Tschetter continued to pursue the pickup through Tulsa, running at speeds of **over 100 miles per hour** through city streets. The majority of the pursuit was over a two (2) lane, undivided and well-trafficked road.

18. After they passed the bus plant located at 2322 North Mingo Road, Tschetter advised he was going to attempt a "TVI" or Tactical Vehicle Intervention when he "had the chance." A TVI is a maneuver in which a patrol car drives into the rear corner of a vehicle being pursued, often causing the vehicle to slew sidewise

**Exhibit 1**

and run off the road. Tschetter never consulted with any other officers or supervisors regarding TVI or whether the pursuit should be engaged in or continued.

19. The pursuit continued <u>for over seven (7) miles</u> until the pickup ran a stop sign at the intersection of 76th Street North and Mingo, and struck a red Chevrolet four-door sedan. Etoyce Johnson, the driver of the Chevrolet, was headed to church when she was critically injured as a direct result of the pursuit. Mrs. Johnson ultimately died as a result of the collision.

20. Defendant Tschetter was, at all times relevant hereto, acting within the scope of his employment and under color of state law.

## Rules for High-Speed Pursuits

21. The Oklahoma Highway Safety Office's 2014 Performance Plan and Highway Safety Plan provides that law enforcement partners like the Oklahoma Highway Patrol should regulate police pursuits by adopting policies similar to that developed by the International Association of Chiefs of Police ("IACP").

22. In 2004, the International Association of Chiefs of Police ("IACP") issued an executive brief regarding the management of police pursuits, which discussed, among other things, a pursuit database the IACP constructed and made available to law enforcement agencies and used to compile a yearly pursuit report, allow the IACP to compare pursuit statistics from year to year and allow agencies to examine pursuit training and amend pursuit policies where necessary. The purpose of the

**Exhibit 1**

database is to provide law enforcement leaders with information that facilitates effective pursuit-related training and policy decisions.

23. The 2004 brief provides that as obvious as the need for some high-speed pursuits may be, "[e]qually obvious is the need to protect the public (and police officers themselves) from unnecessary risks created by indiscriminate high-speed chases. Today, the progressive law enforcement agency uses policy, training, supervision, discipline, and technology to manage these risks and balance the need for criminal apprehension with the need to protect the public in a larger sense." Further, "[s]upervisors are charged with the duty of close involvement in pursuit decision-making and driving behavior," and no initiative is as important as "convincing all officers that the words 'protect and serve' mean much more than the immediate apprehension of law violators at whatever risk."

24. The December 2015 IACP model policy for vehicular pursuits establishes guidelines for the initiation and continuation of vehicular pursuits because such pursuits "can present a danger to the lives of the public, officers and suspects involved in the pursuit." Notably, the model policy provides:

    a. Pursuit is authorized only if the officer has a reasonable belief that the suspect, if allowed to flee, would present a danger to human life or cause serious injury. In general, pursuits for minor violations are discouraged;

    b. The decision to initiate a pursuit must be based on the pursuing officer's conclusion that the immediate danger to the officer and the public created by

**Exhibit 1**

the pursuit is less than the immediate or potential danger to the public should the suspect remain at large;

c. In deciding whether to initiate or continue a pursuit, the officer shall take certain factors into consideration, including the seriousness of the offense, known information on the suspect, road configuration, physical location and population density, existence of vehicular and pedestrian traffic, officer training and experience, and speed and evasive tactics employed by the suspect;

d. A supervisor shall be notified and only two (2) police vehicles involved;

e. The supervisor is responsible for managing all vehicular pursuits to include determining whether the pursuit should continue or be terminated; and

f. The primary unit and supervisor shall continually reevaluate and assess the pursuit situation including all of the initiating factors and terminate the pursuit whenever it is reasonable to believe the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension.

25. At a minimum, the pursuit in this case violated the IACP model policy in the following respects: (1) There could be no reasonable belief that if the driver of the pickup was allowed to flee, he would present a danger to human life or cause serious injury greater than the immediate danger to the public created by the pursuit; (2) No supervisor appears to have been notified or involved in the decision

**Exhibit 1**

to engage in and continue the pursuit; (3) Three (3) vehicles were involved in the pursuit instead of two (2); and (4) The pursuit situation should have been terminated at any number of points prior to the pickup reaching 76th Street North because it was clear that the risks associated with continued pursuit were greater than the public safety benefit of making an immediate apprehension.

26. Nonetheless, Defendant Tschetter testified that he acted in conformance with OHP policy at all times during the pursuit described herein. He further testified that OHP policy regarding high-speed pursuits is simply that it is up to the officer's discretion as far what he or she feels like is dangerous. There is no requirement that the officer consider the nature of the offense that the officer suspects may have been committed when deciding to engage in a pursuit, and there is no requirement that a supervisor be notified or consulted at any point during a pursuit.

27. The OKDPS has ratified the actions of the troopers involved in the pursuit that resulted in Ms. Johnson's untimely death, providing that they "acted in conformance with OHP Policy."

### Responsibility for Promulgating and Implementing Appropriate Pursuit Policies

28. Paragraphs 1-27 are incorporated herein by reference.

29. As noted above, the Commissioner of the OKDPS is ultimately responsible for the operation, control and supervision of the Oklahoma Highway Patrol. 47 O.S. § 2-108; O.A.C. 595:1-1-2. He or she is charged with the duty of observing, administering and enforcing the laws regarding the operation of motor vehicles and

**Exhibit 1**

use of highways in the State of Oklahoma, and authorized to adopt and enforce such rules as may be necessary to such end. *Id.* The Commissioner is charged with requiring the Division of the Highway Patrol to properly patrol the highways of this state and regulate the operation of the vehicles and use of highways. 47 O.S. § 2-118. The Commissioner, as the head of the OKDPS, is responsible for promulgating, implementing and ensuring compliance with policies which instruct and control the manner in which employees conduct and carry out high-speed pursuits on State highways and roads with appropriate consideration for the safety of the public.

30. Defendant Thompson was the OKDPS Commissioner at all times relevant hereto, responsible for promulgating, implementing and ensuring training and compliance with adequate and appropriate pursuit policies. Defendant Thompson was, at all times relevant hereto, acting within the scope of his employment and under color of state law.

31. The Commissioner is authorized to appoint a Chief of the Oklahoma Highway Patrol Division. 47 O.S. § 2-105. Upon information and belief, the Chief, acting in coordination with the Commissioner, is responsible for promulgating, implementing and ensuring compliance with policies which instruct and control the manner in which employees conduct and carry out high-speed pursuits on State highways and roads with appropriate consideration for the safety of the public.

32. Defendant Adams was the OHP Chief of Patrol at all times relevant hereto, and, along with Commissioner Thompson, was responsible for promulgating, implementing and ensuring training and compliance with adequate and appropriate

**Exhibit 1**

pursuit policies. Defendant Adams was, at all times relevant hereto, acting within the scope of his employment and under color of state law.

33. Upon information and belief, the heads of the individual field troops of the Oklahoma Highway Patrol Division, acting in coordination with the Commissioner and the Chief of Patrol, are, within their individual troops, responsible for promulgating, implementing and ensuring compliance with policies which instruct and control the manner in which employees conduct and carry out high-speed pursuits on State highways and roads with appropriate consideration for the safety of the public.

34. Defendant Holt was the Captain and head of Troop B, to which Defendant Tschetter was assigned, at all times relevant hereto, and, along with Commissioner Thompson and Chief Adams, was responsible for promulgating, implementing and ensuring training and compliance with adequate and appropriate pursuit policies. Defendant Holt was, at all times relevant hereto, acting within the scope of his employment and under color of state law.

## CAUSES OF ACTION

### Count I – Negligence against Defendant OKDPS

35. Paragraphs 1-34 are incorporated herein by reference.

36. Defendant Tschetter owed a duty to Etoyce Johnson, and all other drivers on the road, to operate his vehicle in a safe and reasonable manner, using ordinary care to prevent injury to other persons in engaging in pursuits of suspects.

**Exhibit 1**

37. Defendant Tschetter breached the duty owed to Mrs. Johnson by operating his vehicle in a reckless and dangerous manner, engaging in a pursuit of a suspect for possession of a stolen vehicle at high speeds, over great distances and through numerous red lights in a manner that endangered life and property, without due regard for the safety of all persons, including Mrs. Johnson.

38. The circumstances were such that serious injury and death to innocent bystanders like Mrs. Johnson was reasonably likely and foreseeable.

39. Defendant Tschetter acted without due regard, and with reckless disregard, for the safety of persons like Mrs. Johnson.

40. Defendant Tschetter was acting within the scope of his employment with the Highway Patrol Division of the OKDPS at all times relevant hereto.

41. As a direct and proximate cause of Defendant's actions and conduct, Mrs. Johnson, Plaintiff and Mrs. Johnson's other children sustained damages, including but not limited to property damage, serious bodily injury, pain and suffering, death, medical expenses, funeral and burial expenses, grief and loss of companionship as well as other damages in excess of $75,000.00.

42. Pursuant to the Oklahoma Government Tort Claim Act, 51 O.S. § 151, *et seq.*, the OKPDS is liable to Plaintiff for the loss resulting from Defendant Tschetter's negligence.

### Count II – Civil Rights Violations Pursuant to 28 U.S.C. § 1983 against Defendant Tschetter

43. Paragraphs 1-42 are incorporated herein by reference.

**Exhibit 1**

44. By engaging in pursuit of a person suspected of possessing a stolen vehicle at high speeds of over 100 miles per hour through urban, high-traffic areas with other vehicles and innocent members of the public present, and proceeding for several miles through numerous red lights and other traffic control devices without observing those traffic control devices, Defendant Tschetter created a serious and significant danger to Mrs. Johnson and the public at large.

45. At all times relevant hereto, Defendant Tschetter acted under color of law in his capacity as a patrolman with the Oklahoma Highway Patrol Division of the OKDPS.

46. Harm to Mrs. Johnson was a clearly foreseeable and direct result of Defendant Tschetter's actions.

47. Defendant Tschetter's actions in the setting in which they occurred were so unreasonable, unwarranted and unnecessary that they shock the conscience of a reasonable person.

48. Mrs. Johnson was a foreseeable victim of Defendant Tschetter's acts.

49. As a direct and proximate cause of Defendant's actions and conduct, Mrs. Johnson, Plaintiff and Mrs. Johnson's other children sustained damages, including but not limited to property damage, serious bodily injury, pain and suffering, death, medical expenses, funeral and burial expenses, grief and loss of companionship as well as other damages in excess of $75,000.00.

### Count III – Civil Rights Violations Pursuant to 28 U.S.C. § 1983 against Defendants Thompson, Adams and Holt

(Supervisor Liability)

**Exhibit 1**

50. Paragraphs 1-49 are incorporated herein by reference.

51. Upon information and belief, the OKDPS Highway Patrol Division and Defendants Thompson, Adams and Holt were final policymakers, responsible for establishing, enacting, promulgating and enforcing policies for police pursuits which would ensure that the constitutional rights of individuals like Mrs. Johnson were protected and maintained.

52. Defendants failed to train, supervise, and establish an adequate pursuit policy and permitted or acquiesced to a custom of constitutional deprivation with regard to officers engaging in high speed pursuits.

53. Defendants failed to properly supervise Defendant Tschetter before and during the aforementioned pursuit, resulting in a violation of Mrs. Johnson's civil rights and her untimely and tragic death.

54. Defendants, acting with deliberate indifference to the consequences, established, implemented and maintained a policy or custom of inadequate training and supervision, resulting directly in the foreseeable consequence of Defendant Tschetter engaging in an unwarranted and unreasonably dangerous pursuit which caused the tragic and untimely death of Ms. Johnson.

55. As a direct and proximate cause of Defendants' actions and conduct, Mrs. Johnson, Plaintiff and Mrs. Johnson's other children sustained damages, including but not limited to property damage, serious bodily injury, pain and suffering, death, medical expenses, funeral and burial expenses, grief and loss of companionship as well as other damages in excess of $75,000.00.

**Exhibit 1**

WHEREFORE, premises considered, Plaintiff pray this Court award damages in his favor in excess of $75,000.00 against the Defendants, and award punitive damages in his favor in excess of $75,000.00 against Defendants Tschetter, Thompson, Adams and Holt, for the wrongful death of Etoyce Johnson, including attorneys' fees, costs, interest and any other relief this Court deems just and proper.

Respectfully submitted,

SMOLEN, SMOLEN & ROYTMAN, PLLC

Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F
donaldsmolen@ssrok.com
laurahamilton@ssrok.com
*Attorneys for Plaintiffs*

**Exhibit 1**